UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD RANIA,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>    Defendant. | No.  2:20-cv-01541 MCE CKD (SS)<br><br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the undersigned Magistrate Judge will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

    Plaintiff, born in 1957, worked as a golf course ranger, golf course greenskeeper, water and sewer systems supervisor, operating engineer, highway maintenance worker, and landscape laborer.  AT 26, 199.  He applied on December 2, 2016 for disability insurance benefits, alleging disability beginning October 1, 2015.  Administrative Transcript ("AT") 15.  Plaintiff alleged he was unable to work due to degenerative disc disease, lower back herniation, arthritis in both

knees, and depression. AT 229. In a decision dated October 23, 2019, the ALJ determined that plaintiff was not disabled.[1] AT 15-27. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity during the period from his alleged onset date of October 1, 2015 through his date last insured of September 30, 2018.
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and osteoarthritis.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work unless otherwise noted. He could lift and carry 25 pounds occasionally and 25 pounds frequently; stand and walk for 6 hours; sit for 6 hours; frequent but not constant stooping, kneeling, crouching, and climbing stairs.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as an Operating Engineer and Water and Sewer Systems Supervisor. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2015, the alleged onset date, through September 30, 2018, the date last insured.

AT 17-27.

ISSUE PRESENTED

Plaintiff argues that the ALJ failed to include the mental limitations assessed at Step Two in the residual functional capacity and hypothetical questions to the vocational expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff argues that the ALJ erroneously failed to include the non-severe mental limitations assessed at Step Two into the RFC.[2]  Plaintiff asserts that "[t]his issue has nothing to do with how the ALJ weighed the medical evidence or what medical opinions and facts were considered.  Rather, the issue is solely whether the ALJ's findings of mild limitations in [four areas of mental functioning] were accounted for in the RFC finding."  (ECF No. 17 at 6, n. 1.)  Plaintiff claims that the RFC, which contained no mental limitations, was not supported by substantial evidence and constituted harmful error.

The ALJ found that plaintiff had mild limitations in four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  AT 19-20.  "Because the claimant's medically determinable mental impairments caused no more than 'mild' limitation in any of these functional areas, they were non-severe," the ALJ concluded.  AT 20.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  RFC is assessed based on the relevant

---

[2] Plaintiff also argues that his mental limitations should have been included in the hypothetical questions to the VE. As these questions are based on the determined RFC, the undersigned will focus on whether the RFC is supported by substantial evidence.

evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Plaintiff asserts that the ALJ is required to include all limitations he finds credible in the RFC, regardless of whether the limitations are severe or non-severe. For this proposition, he cites 20 C.F.R. § 404.1523, which describes how multiple impairments are considered in the disability determination. It provides that two or more concurrent impairments may be considered severe in combination, and that the ALJ will "will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." § 404.1523(c). Plaintiff also cites § 404.1545(a)(2), which provides that the ALJ "will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when [assessing] your residual functional capacity." While these regulations require the ALJ to <u>consider</u> the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC.

Plaintiff argues that the ALJ was required to translate his findings of non-severe mental limitations into "concrete limitations" in the RFC, citing <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008). That case holds that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."[3] <u>Id.</u> Here, the ALJ gave "great weight" to the opinions of the state agency psychological consultants, Dr. Dalton and Dr. Mateus, "who indicated that the claimant had no severe mental impairments, as well as the opinion of the psychological consultative examiner [Dr. Lacy], who found no more than mild limitations." AT 21; <u>see</u> AT 69-70 (Dr. Dalton), 83 (Dr. Mateus), 447-452 (Dr. Lacy). Both agency doctors noted

---

[3] Like the regulations cited above, <u>Stubbs-Danielson</u> does not stand for the proposition that the ALJ is required to incorporate non-severe impairments into the RFC.

5

1  that plaintiff had no history of current treatment for mental issues; could perform routine
2  activities of daily living; had intact cognition; and that his record reflected "no more than mild
3  pathology and/or functional impairments which is consistent with [claimant's] limited
4  psych[iatric] history, adaptive functioning, and intact mental status." AT 69, 83.  Based on her
5  psychiatric evaluation, Dr. Lacy opined that plaintiff was "able to perform detailed and complex
6  tasks with no impairment." AT 451.  After summarizing these opinions, the ALJ concluded that
7  "there does not appear to be any opinion from an acceptable medical source indicating that the
8  claimant is in fact limited in his capacity to work due to his mental impairments." AT 21.  Under
9  Stubbs-Danielson, the lack of mental restrictions in the RFC is consistent with the mental
10 restrictions identified by the opining doctors.

11      Plaintiff next argues that the ALJ did not adequately explain why "the mild limitations he
12 found credible" did not "translate into any work-related limitations." (ECF No. 21 at 4.)
13 However, the ALJ's reliance on Dr. Lacy's opinion, which concluded that plaintiff could perform
14 "detailed and complex tasks," goes a long way in explaining why the ALJ did not find plaintiff's
15 mild mental impairments to preclude this type of work.  See Thomas v. Barnhart, 278 F.3d 947,
16 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve
17 as substantial evidence when the opinions are consistent with independent clinical findings or
18 other evidence in the record.").  The ALJ noted that plaintiff "appeared to understand the
19 questions asked of him at the hearing, and was able to utilize his memory to produce responses....
20 [He] did not have substantial difficulty interacting with others or communicating in a relatively
21 effective manner. . . . [He] appeared generally capable of concentrating during the hearing and
22 persisting throughout its entirety." AT 19-20.).  See Morgan v. Comm'r of SSA, 169 F.3d 595,
23 600 (9th Cir. 1999) (ALJ may rely on personal observations of claimant at hearing as part of
24 credibility analysis).

25      The ALJ considered that plaintiff's mental status examinations were relatively normal,
26 "with no sign of consistent and noteworthy deficits longitudinally during the relevant period."
27 AT 21.  "If the claimant were in fact more than minimally limited by his medical impairments,
28 one would expect consistent signs reflective of such." AT 18.  However, "most mental status

findings were indicative of intact functioning." AT 19.  The ALJ also considered plaintiff's statement that "he handles stress and changes in routine perfectly" and that there was "no consistent sign of the claimant struggling to understand the nature of hazards or the differences between acceptable and unacceptable behaviors." AT 20.  Based on the medical record, doctors' opinions, and the ALJ's own observations, the ALJ concluded that "the evidence of record supports no mental-related limitation during the period in question." AT 21.

For the reasons discussed above, the undersigned finds that the ALJ met his burden to consider the record as a whole and plaintiff's ability to meet the mental requirements of work in formulating the RFC, which was adequately explained and grounded in substantial evidence.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 6, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/rania1541.ssi.ckd_f&rs